IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RONEY SEARCY,

     Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

     Defendant.

CIVIL ACTION NO.

1:17-CV-00680-TWT-CMS

## FINAL REPORT AND RECOMMENDATION

Plaintiff Roney Searcy ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  For the reasons set forth below, I **RECOMMEND** that the Commissioner's decision be **AFFIRMED**.

## I.    FIVE-STEP SEQUENTIAL EVALUATION

A claimant is considered disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that is expected to result in death or has lasted or is expected to last for a continuous period of not less than twelve months.  See 42 U.S.C.

§ 1382c(a)(3)(A).  The burden of proving disability lies with the claimant.  <u>See</u> 20 C.F.R. § 404.1512; <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005).  The issue in this appeal is whether the ALJ committed reversible error in failing to fully and fairly develop the record by not consulting with a medical expert regarding Plaintiff's impairments and the limitations arising from those impairments.

To determine whether the claimant has met his burden, the Court looks to the five-step evaluation process set forth in the Social Security Regulations (the "Regulations").  <u>See</u> 20 C.F.R. § 416.920; <u>Dixon v. Astrue</u>, 312 F. App'x 227, 227-28 (11th Cir. 2009); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999).  At step one, the claimant must prove that he has not engaged in substantial gainful activity.  <u>See</u> 20 C.F.R. § 416.920(b).  At step two, he must demonstrate a severe impairment or combination of impairments.  <u>See</u> 20 C.F.R. § 416.920(c).  Then, at step three, if the claimant's impairment meets or medically equals a listed impairment, he is automatically found disabled.  <u>See</u> 20 C.F.R. § 416.920(d).  If not, he must advance to step four.  <u>See</u> 20 C.F.R. §§ 416.920(e), (f).  At that step, the claimant's residual functional capacity ("RFC") and ability to return to his past relevant work is assessed.  <u>See</u> <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1238 (11th Cir. 2004).  "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments."  <u>Id.</u> (citing 20 C.F.R.

§ 404.1545(a)); <u>Moore v. Comm'r of Soc. Sec.</u>, 478 F. App'x 623, 624 (11th Cir. 2012).   If the claimant can perform past relevant work, he will be found not disabled.   <u>See</u> 20 C.F.R. § 416.920(f).   If he cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform."   <u>Moore</u>, 478 F. App'x at 624.   If the claimant can perform such other work, he will be found not disabled.   <u>See</u> 20 C.F.R. § 416.920(g).   If he cannot, he will be found disabled.   <u>Id.</u>

## II.   <u>BACKGROUND</u>

Plaintiff and the Commissioner have set forth details of Plaintiff's medical history in their respective briefs.   Each has emphasized different aspects of that history; however, neither party has objected to the facts as set forth by the other.   I have considered all of these facts and do not find it necessary to repeat the medical evidence in the same level of detail as Plaintiff and the Commissioner.   The relevant points are discussed below.

On February 14, 2015, Plaintiff applied for SSI.   [Doc. 8, Transcript ("Tr.") 217-23].   On February 17, 2015, Plaintiff applied for a period of disability and DIB.   [Tr. 224-25].   In both applications, Plaintiff alleged a disability onset date of January 14, 2015.   [Tr. 217, 224].   Plaintiff applied for these benefits based on the

allegation that he was suffering from suicidal ideation and stage 2 colon cancer. [Tr. 78, 88, 100, 113]. The Social Security Administration denied Plaintiff's applications initially on April 22, 2015, and upon reconsideration on September 28, 2015. [Tr. 78-145]. On October 16, 2015, Plaintiff requested a hearing before an administrative law judge ("ALJ") [Tr. 146-48], and the ALJ held a hearing on July 21, 2016, in Atlanta, Georgia [Tr. 32-77]. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Robert Lessne, a Vocational Expert. [Tr. 32-77].

On September 6, 2016, the ALJ issued his decision, finding that Plaintiff was not disabled under the Social Security Act. [Tr. 13-31]. Applying the sequential process required under 20 C.F.R. § 416.920, the ALJ made the following findings. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 14, 2015, the alleged onset date. [Tr. 18]. At step two, the ALJ determined that Plaintiff had the following severe impairments: rectal adenocarcinoma, chemotherapy-induced peripheral neuropathy, and depression. [Tr. 18-21]. The ALJ also determined that Plaintiff had the non-severe impairment of back pain. [Id.]. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 21-23].

The ALJ went on to determine that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations: no climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs; occasionally balancing, stooping, kneeling, crouching, or crawling; no exposure to workplace hazards such as unprotected heights; limited to simple, routine, repetitive tasks, with occasional changes in the work setting and occasional interaction with the public and coworkers; ability to concentrate and persist for two-hour segments; and inability to meet fast-paced, high production demands. [Tr. 23-25]. In doing so, the ALJ evaluated the credibility of Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of his pain and other symptoms. [Id.].

In his decision, the ALJ opined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Tr. 24]. With respect to the severe impairment of rectal adenocarcinoma, the ALJ stated that "[o]verall, the evidence shows successful treatment and resection of the claimant's rectal adenocarcinoma, from diagnosis in January 2015 to

chemoradiation, ileostomy, and reversal of ileostomy by Dr. Gelbard in late July 2016[.]" [Id.]. The ALJ noted that an MRI taken of Plaintiff's lumbar spine in February 2015 was normal, with no evidence of metastatic disease. [Id.]. The ALJ also noted that CT scans taken of Plaintiff's chest and abdomen in July 2015 and May 2016 were also negative for signs of metastases. [Id.]. The ALJ noted that "Dr. Gelbard found no recurrent disease during surgery for ileostomy reversal in July 2016[.]" [Id.]. As such, the ALJ concluded that "the record as a whole shows successful treatment for rectal adenocarcinoma." [Id.].

With respect to the severe impairment of chemotherapy-induced peripheral neuropathy, the ALJ noted that despite suffering from peripheral neuropathy, Plaintiff's testimony indicated that he is independent with hygiene and daily self-care, can prepare simple meals, and can shop for a few light grocery items by himself. [Tr. 24]. Based on the record evidence and Plaintiff's testimony, the ALJ concluded that Plaintiff "continues to have good functional capabilities following his treatment for cancer and chemotherapy-induced neuropathy." [Id.].

With respect to the severe impairment of depression, the ALJ noted "a lack of ongoing, consistent mental health care evidence in the record." [Tr. 24]. The ALJ noted that while Plaintiff had been diagnosed with major depressive disorder in April 2015 and maintained that he had been depressed for "a long time," Dr.

Steven Snook, Ph.D., a consultative psychologist, noted that Plaintiff "has not sought any formal counseling" despite these complaints of depression. [Id.]. The ALJ also cited to Plaintiff's medical records from Grady Hospital, which showed occasional visits from social workers but no referrals to psychiatrists or psychologists. [Id.]. The ALJ also noted Plaintiff's denial of any depression during a clinic visit in May 2015. [Id.]. The ALJ noted that there was no evidence that Plaintiff had taken anti-depressant medication on a sustained basis. [Id.]. Accordingly, the ALJ concluded that a "lack of continuing treatment and medication management allows a reasonable inference that the claimant's depressive symptoms are not as severe as alleged." [Id.].

With respect to the non-severe impairment of back pain, the ALJ noted that there were no diagnostic imaging studies showing spinal canal stenosis, herniated or ruptured discs, or nerve root impingements. [Tr. 24]. The ALJ noted that an MRI taken of Plaintiff's lumbar spine in February 2015 was "normal," with no evidence of spinal cord compression, spondylosis, or metastases. [Id.]. The ALJ also noted that during a March 2016 emergency room visit, physicians observed Plaintiff to have normal gait, and Plaintiff informed the physicians that his back pain "only occurs on occasion." [Id.]. The ALJ noted that there were no physical examination findings showing positive straight leg raise test, muscle atrophy, or

7

abnormal gait.  [Id.].  As such, the ALJ concluded that "[n]one of the evidence supports a finding of disability based on chronic back pain."  [Id.].

The ALJ gave very little to no weight to the opinion evidence of various State agency consultants, stating that this evidence was "not supported by the medical evidence of record[.]"  [Tr. 25].  The ALJ also gave little weight to the opinion of Plaintiff's treating oncologist, Walid Shaib, M.D.  [Id.].  The ALJ noted that while Dr. Shaib originally stated that Plaintiff could return to work in April 2015 (four months after the disability onset date), Dr. Shaib later indicated that Plaintiff could be out of work for one year after speaking to a social worker.  [Id.]. The ALJ concluded that Dr. Shaib's opinion was not supported by the record evidence, which showed that Plaintiff had successfully undergone treatment and surgery, was able to walk without assistance, had no pain, and was reported as "currently doing well" following his surgery.  [Id.].

In light of his RFC finding, the ALJ noted that Plaintiff "is unable to perform any past relevant work" but that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]"  [Tr. 25-26]. Accordingly, the ALJ concluded that Plaintiff was not disabled from January 14, 2015, his alleged disability onset date, through the date of the ALJ's decision.  [Tr. 26].  Following the ALJ's September 6, 2016 adverse decision, Plaintiff requested

that the Appeals Council review the ALJ's decision, arguing that the ALJ "should have ordered medical expert testimony to determine whether medical listing met or equalled [*sic*] due to severity of several different medical conditions." [Tr. 12]. On December 23, 2016, the Appeals Council denied Plaintiff's request for review, declining to review the ALJ's decision. [Tr. 1-4]. When the Appeals Council denied Plaintiff's request, the ALJ's decision became the final decision of the Commissioner. See 42 U.S.C. § 405(g). On February 23, 2017, Plaintiff timely filed this civil action, requesting reversal of the Commissioner's adverse decision. [Docs. 1, 3].

### III.   LEGAL STANDARD

Affirmance of the Commissioner's decision is mandatory if his conclusions are supported by substantial evidence and based upon an application of correct legal standards. See 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and

citations omitted).  If substantial evidence supports the decision, the court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings[.]"  Id. at 1158-59.  In reviewing the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  See Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 782 (11th Cir. 2014); Barnes v. Sullivan, 932 F.2d 1356, 1357-58 (11th Cir. 1991).

## IV.   DISCUSSION

On appeal, Plaintiff argues that the ALJ committed reversible error in failing to fully and fairly develop the record by not consulting with a medical expert regarding Plaintiff's impairments and the limitations that resulted from those impairments.[1]  [Doc. 12 at 15-17].  Specifically, Plaintiff asserts that the ALJ should have consulted a medical expert "to determine whether [Plaintiff] would have been unable to work for at least a year" because the ALJ "did not have the medical expertise to make findings about the side effects of [Plaintiff]'s treatment

---

[1]    Although Plaintiff also purports to challenge the ALJ's credibility determination, Plaintiff does not actually make any arguments in furtherance of this position.  Rather, immediately after arguing that the ALJ erred in not finding Plaintiff credible, Plaintiff argues that "[o]ne of the ways that the ALJ could have had substantial evidence for his decision . . . is to have had a medical expert at the hearing to testify as to the limitations a person would have going through all the treatment and impairments that [Plaintiff] went through."  [Doc. 12 at 15].  Thus, I have construed Plaintiff's sole argument in this appeal to be whether the ALJ's failure to consult with a medical expert is reversible error.

and medical condition." [Id. at 15-16]. In response, the Commissioner argues that the ALJ did not need medical expertise to interpret the medical evidence he relied upon, and therefore "the ALJ did not need medical expert testimony to find Plaintiff was not disabled[.]" [Doc. 13 at 12]. Upon my independent review of the ALJ's decision and the record evidence, I find that the ALJ clearly articulated his reasons for finding Plaintiff to be not disabled and did not require medical expert testimony to reach this conclusion.

While an ALJ "has a basic duty to develop a full and fair record," the ALJ is not obligated to automatically obtain testimony from a medical expert. See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Rather, the ALJ "*may ask for and consider the opinion of a medical . . . expert concerning whether . . . [a claimant's] impairment(s) could reasonably be expected to produce [his or her] alleged symptoms.*" 20 C.F.R. § 404.1529 (emphasis added). Critically, the ALJ is not required to order additional medical opinion when, as here, the record contains sufficient evidence for the ALJ to make a disability determination. See Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted); see also Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) (holding that additional medical testimony was unnecessary where the record was sufficient for a decision). Moreover, "there must be a showing of prejudice before it is found

that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997).

In the instant case, the ALJ's failure to consult a medical expert did not prevent the development of a full and fair record, because Plaintiff presented the ALJ with sufficient and detailed medical records for consideration.[2] See Good v. Astrue, 240 F. App'x 399, 404 (11th Cir. 2007) (citation omitted) ("As this court has explained, the ALJ need not order an additional consultative examination where the record was sufficient for a decision."). In his decision, the ALJ sufficiently articulated his reasons for concluding that Plaintiff's rectal adenocarcinoma had been successfully treated, citing to MRI and CT scan results showing no signs of metastatic disease. [Tr. 24]. The ALJ also stated that Plaintiff's testimony and the record evidence demonstrated Plaintiff's "good

---

[2] Plaintiff spends nearly eight pages in his brief arguing that he has satisfied the three-part "pain standard" articulated in Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). This argument, however, is flawed because Plaintiff incorrectly assumes that meeting the threshold "pain standard" is the end of the inquiry. The Eleventh Circuit has explained that the question is not whether the ALJ could have reasonably credited Plaintiff's subjective testimony about pain, but rather whether the ALJ was clearly wrong to discredit it. See id. As set forth below, the record reveals no reversible error in the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Tr. 24].

functional capabilities" following his treatment for cancer and neuropathy. [Id.].

With respect to Plaintiff's depression, the ALJ cited to a lack of evidence of

continuing treatment and medication management in the medical record to support

a finding of severe depression. [Id.]. Finally, with respect to the ALJ's conclusion

regarding Plaintiff's back pain, the ALJ cited to evidence showing a normal MRI

of the lumbar spine and normal gait as well as a lack of findings showing positive

straight leg raise test, muscle atrophy, or abnormal gait. [Id.].

Plaintiff concedes that the ALJ's decision "went through the medical

evidence in somewhat detail." However, Plaintiff argues that "the interpretation of

the medical evidence by the ALJ was in error." [Doc. 12 at 9-10]. This argument

is unavailing because it is the ALJ's role, not Plaintiff's, to weigh and interpret the

record evidence. It is evident that the ALJ considered Plaintiff's entire medical

record to arrive at his finding that Plaintiff was not disabled. Plaintiff does not

argue that the ALJ failed to evaluate any particular portions of the record evidence

or that the ALJ improperly assigned weight to any particular evidence. Rather,

Plaintiff argues that the ALJ "did not have the expertise to simply find that

[Plaintiff] was not disabled" and "should have called on a medical advisor[.]"

[Doc. 14 at 3]. The record was sufficiently developed for the ALJ to make a

determination as to whether Plaintiff was disabled for a closed period of time, and

the ALJ properly considered the evidence before him in making this determination. See Fries v. Comm'r of Soc. Sec. Admin., 196 F. App'x 827, 830-31 (11th Cir. 2006) (the ALJ's failure to consult a medical expert did not prevent the development of a full and fair record); Castle v. Colvin, 556 F. App'x 849, 853-54 (finding that the ALJ appropriately considered all of the evidence and that a consultative examination was not necessary because the record was fully and fairly developed).

Based on my review of the record, I conclude that the ALJ's findings concerning his evaluation of the medical records were sufficient to allow the ALJ to make an RFC determination and ultimately to conclude that Plaintiff was not disabled. Accordingly, because the ALJ developed a full and fair record and committed no error by failing to consult a medical expert, remand is not warranted.

## V.     CONCLUSION

For the foregoing reasons, I **RECOMMEND** that the Commissioner's decision be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED**, this 29th day of March, 2018.

Catherine M. Salinas
United States Magistrate Judge

14